

# NUMBER 13-12-00515-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JAMES DUBOSE,                                                    Appellant,

v.

THE STATE OF TEXAS,                                             Appellee.

### On appeal from the 25th District Court
### of Gonzales County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria**
**Memorandum Opinion by Justice Rodriguez**

Appellant James Dubose challenges his convictions for assault against a public servant and attempting to take a weapon from a peace officer, third-degree and state jail felonies, respectively. *See* Tex. Penal Code Ann. §§ 22.01(a), (b)(1), 38.14(b), (e)(2) (West, Westlaw through 2013 3d C.S.). By one issue, appellant argues that the trial

court erred in refusing to include his proposed self-defense and defense-of-others instructions in the jury charge. We affirm.

## I. Background[1]

Appellant was indicted on one count of aggravated assault of a public servant and two counts of attempting to take a weapon from a peace officer in connection with his altercation with a Gonzales County Sheriff's deputy.[2] Appellant pleaded not guilty, and his case was tried to a jury.

At trial, the following facts were undisputed. On the day of the alleged offenses, appellant went to the home of his former mother-in-law, LouAnn Heinshon, to visit his daughter. Appellant brought his girlfriend, Tracie Wrape, with him to the visit. When appellant arrived at the home, he discovered that several additional people were present: his estranged wife, Jessica; Inella West, Jessica's grandmother; Jason Torres, Jessica's brother; Isabell De Los Santos, Jason's ex-girlfriend; and Jordan Meredith, Jessica's ex-boyfriend. An altercation ensued between Jessica and Tracie, and law enforcement was called. Sergeant Floyd Toliver, a deputy with the Gonzales County Sheriff's Department, came to the scene to investigate. After listening to Tracie's version of events, Sergeant Toliver went inside and began speaking to Jessica. Appellant continually interrupted the conversation between Sergeant Toliver and Jessica and became increasingly upset and angry.

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] Appellant was also charged with one count of violating his conditions of bond, but the State abandoned that count prior to trial.

Although the exact sequence of the ensuing events are disputed, it is undisputed that appellant and Sergeant Toliver had a violent altercation, in which Sergeant Toliver was seriously injured. At trial, Sergeant Toliver testified that when appellant became belligerent, he attempted to place him under arrest and appellant attacked him. In his testimony, appellant disagreed that Sergeant Toliver attempted to arrest him. Instead, appellant testified that Sergeant Toliver asked him leave the home, and as appellant was attempting to walk out the door, someone grabbed him from behind and appellant then struck out at the person who grabbed him. Appellant admitted Sergeant Toliver was that person and that he continued to assault Sergeant Toliver even after he realized the person he was assaulting was a peace officer. Appellant does not deny that he viciously attacked Sergeant Toliver—elbowing him in the head, pinning him to the ground, kicking him in the side with steel-toed boots, and choking him with his arms. Further, there was testimony that appellant tried to grab Sergeant Toliver's pepper spray and gun; appellant denied that he ever tried to grab the gun, but testified that he tried to grab the pepper spray to defend himself.

Because he believed appellant was trying to grab Sergeant Toliver's gun, Jason, Jessica's brother, went to his room to retrieve his gun. He ran out of his room brandishing a .45 semi-automatic pistol and shouted at appellant that he would shoot appellant if he did not take his hand off Sergeant Toliver's gun. At this point, appellant stopped hitting Sergeant Toliver and left the home.

Appellant testified repeatedly that he was in fear for his life both when he was grabbed by Sergeant Toliver and when Jason threatened to shoot him. He testified that his only thoughts throughout the altercation were getting out of the situation alive. He

3

also testified that he feared for the lives of the other persons in the house when Jason began threatening him with his gun.

After the close of evidence, the jury was charged on the three indicted counts. First, the jury was charged on aggravated assault of a public servant, with the option of instead convicting appellant of the lesser-included offenses of aggravated assault, assault on a public servant, or assault. Second, the jury was charged on the offense of attempting to take a weapon from a peace officer, in this count, Sergeant Toliver's firearm. Third, the jury was again charged on the offense of attempting to take a weapon from a peace officer, in this count, Sergeant Toliver's pepper spray.

Before the charge went to the jury, appellant requested four defensive instructions to be included in the assault charge: one self-defense instruction based on Sergeant Toliver's actions; one self-defense instruction based on Jason's actions; a defense-of-other instruction based on Jason's actions; and a self-defense instruction based on the alleged use of excessive force by Sergeant Toliver. The trial court denied the four instructions. However, both attempting-to-take-a-weapon charges included the following excessive-force defensive instruction:

> It is a defense to a prosecution for this offense that the defendant attempted to take the weapon from a peace officer who was using force against the defendant in excess of the amount of force necessary to be used. Therefore, if you find from the evidence beyond a reasonable doubt that the officer was using force against the defendant in excess of the amount of force necessary to be used then you will find the defendant not guilty of the offense of Attempting to Take a Weapon from a Peace Office[r]
> . . . .

On count one, the jury returned a guilty verdict on the lesser-included offense of assault of a public servant. On count two, the jury returned a verdict of not guilty. On

4

count three, the jury returned a verdict of guilty. Punishment was tried to the jury, which assessed a term of ten years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice for count one and two years' imprisonment in the State Jail Division for count two. This appeal followed.

## II. Applicable Law and Standard of Review

[U]nder [section] 2.03(c) [of the penal code], a defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true. [TEX. PENAL CODE ANN. § 2.03(c) (West, Westlaw through 2013 3d C.S.)]. In determining whether a defense is thus supported, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven. If a defense is supported by the evidence, then the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. But the evidence must be such that it will support a rational jury finding as to each element of the defense.

The requirement that the evidence must rationally support a jury finding before a defensive instruction is required serves to preserve the integrity of the jury as the fact[]finder by ensuring that it is instructed as to a defense only when, given the evidence, that defense is a rational alternative to the defendant's criminal liability. If a jury were instructed as to a defense even though the evidence did not rationally support it, then the instruction would constitute an invitation to the jury to return a verdict based on speculation. Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law.

*Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007) (internal citations omitted).

## III. Discussion

By one issue, appellant challenges the trial court's refusal to include his four proposed defensive instructions in the jury charge. We will address each requested instruction in turn.

5

## A. Self-Defense Against Sergeant Toliver

Appellant's first requested instruction read as follows:

> A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

> The use of force against another is not justified in response to verbal provocation alone.

> "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the defendant.

> "Unlawful" means criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege.

> Now bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, James Dubose, In the County of Gonzales and State of Texas, on or about the 9th day of February, 2011, did then and there use force on Floyd Toliver in committing the offense of Aggravated Assault of a Public Servant as alleged in the indictment, but you further find, or have a reasonable doubt thereof, that the defendant reasonable believed (as viewed from his standpoint alone) that force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful force by the said Floyd Toliver, and that the use of force, if any, by the said defendant was not in response to verbal provocation alone, then you will acquit the defendant and say by your verdict "not guilty."

The language of the foregoing tracked section 9.31(a) of the penal code, which outlines the requirements for a general self-defense justification. *See* TEX. PENAL CODE ANN. § 9.31(a) ("[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."). However, section 9.31(b) provides that the justification of self-defense is not available in certain circumstances, namely when the force is being used to resist an arrest "the actor knows

6

is being made by a peace officer."  *Id.* § 9.31(b).  To be entitled to an instruction on self-defense when resisting an arrest that a defendant knows is being made by a peace officer, there must be some evidence in the record to show that (1) "before the actor offers any resistance, the peace officer . . . uses or attempts to use greater force than necessary to make the arrest or search," and (2) "the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's . . . use or attempted use of greater force than necessary."  *Id.* § 9.31(c); *Porteous v. State*, 259 S.W.3d 741, 748 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd).

Assuming without deciding that Sergeant Toliver had not attempted to arrest appellant before the altercation ensued,[3] appellant still was not entitled to an instruction based on general self-defense principles.  There was no evidence that the degree of force used by appellant against Sergeant Toliver—elbowing him in the head, knocking him to the ground, kicking him in the side with steel-toed boots, and choking him with his arms—was necessary to protect appellant.  "The amount of force used must be in proportion to the force encountered."  *Tidmore v. State*, 976 S.W.2d 724, 728 (Tex. App.—Tyler 1998, pet. ref'd); *see also McBride v. State*, No. 13-04-00575–CR, 2006 WL 1965822, at *5 (Tex. App.—Corpus Christi July 13, 2006, pet. ref'd) (mem. op., not designated for publication).  And here, the amount of force used by appellant was clearly

---

[3] There was conflicting testimony at trial as to whether Sergeant Toliver attempted to arrest appellant.  If we assumed that Sergeant Toliver had attempted to arrest appellant before appellant attacked him, appellant would only have been entitled to a self-defense instruction based on Sergeant Toliver's actions if those actions constituted excessive force.  *See* Tex. Penal Code Ann. § 9.31(c) (West, Westlaw through 2013 3d C.S.).  Because the instruction proposed by appellant at trial did not include the excessive force language provided by the statute, under this assumed scenario, appellant's first-requested instruction did not comply with the applicable law, and we could not conclude the trial court erred in denying this instruction on this basis.

disproportionate. Appellant testified at trial that, although he was initially unaware of who grabbed him from behind, he kept attacking that person even after he realized the person who grabbed him was Sergeant Toliver. In short, it was not reasonable for appellant to conclude, based on the minimal action taken by Sergeant Toliver in grabbing appellant's arm and, especially, once appellant realized it was a peace officer he was attacking, that it was necessary to use the degree of force he used. *See* TEX. PENAL CODE ANN. § 9.31(a). The evidence did not support appellant's first proposed instruction, and the trial court did not err in denying it. *See Shaw*, 243 S.W.3d at 657–58.

## B. Self-Defense against Jason and Defense of Others

Because our conclusions as to appellant's second and third requested instructions rest on the same reasoning, we address both instructions together. Appellant's second requested instruction—regarding self-defense against Jason—read as follows:

> A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.
>
> The use of force against another is not justified in response to verbal provocation alone.
>
> "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the defendant.
>
> "Unlawful" means criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege.
>
> Now bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, James Dubose, In the County of Gonzales and State of Texas, on or about the 9th day of February, 2011, did then and there use force on Floyd Toliver in committing the offense of Aggravated Assault of a Public Servant as alleged in the indictment, but you further find, or have a reasonable doubt thereof, that the defendant reasonable believed (as viewed from his

8

standpoint alone) that force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful force by the said Jason Torres, and that the use of force, if any, by the said defendant was not in response to verbal provocation alone, then you will acquit the defendant and say by your verdict "not guilty."

Appellant's third requested instruction—regarding defense of others—read as follows:

Upon the law of defense of a 3rd person, you are instructed that a person is justified in using force to protect a third person when and to the degree he reasonably believes the force would be necessary to protect himself against the use of force or deadly force he reasonably believes to be threatening the third person or persons [he] seeks to protect.

Now if you believe that on or about the 9th day of February, 2011 in Gonzales County, the Defendant, James Dubose reasonably believed that force was immediately necessary (as viewed from his standpoint alone) to protect third persons or persons, namely, Floyd Toliver, Jessica Dubose, LouAnn Heinsohn, Inella West and Jordan Meredith against the use of force and deadly force by Jason Torres and a reasonable person in James Dubose's situation, would not have retreated, you will acquit the defendant and say by your verdict "not guilty."

In neither his appellate brief nor at trial did appellant explain how his use of force against Sergeant Toliver was a means of self-defense against Jason. Likewise, appellant does not explain how his attack on Sergeant Toliver protected the third persons specified in the third requested instruction.[4] Although appellant does not rely on it in his brief, we find that the only evidence in the record that arguably explains the connection is appellant's testimony that, during his attack on Sergeant Toliver, a thought ran through his head that taking Sergeant Toliver's pepper spray was the only way to "get out of there alive." There is no further evidence in the record illuminating why appellant's continued assault of Sergeant Toliver was necessary to protect himself from Jason or to protect the

---

[4] Indeed, we cannot conceive of any reasonable explanation as to why attacking Sergeant Toliver was a means of protecting Sergeant Toliver.

identified third persons from Jason.

In short, we conclude there was no evidence from which a rational fact finder could conclude that appellant had a reasonable belief that his use of force against Sergeant Toliver was necessary to protect himself or protect others from Jason's threat. *See id.* at 657–58. A verdict based on appellant's testimony about retrieving Sergeant Toliver's pepper spray would have been no more than speculation by the fact finder. *See id.* at 658. Therefore, the trial court did not err in refusing these instructions.

## C. Justification Based on Excessive Force

Appellant's fourth requested instruction read as follows:

> You are instructed that a peace officer is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to make such arrest, if he reasonably believes the arrest is lawful and provided, before using force, such officer manifests his purpose to arrest and identifies himself as a police officer, unless he reasonably believes his purpose and identity are already known by or cannot be reasonably made known to the person to be arrested.

> On the other hand, the use of force to resist arrest is [un]justified if, before a person offers any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest and when and to the degree the person reasonably believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary.

> The term "reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor in the particular situation.

> If you find from the evidence, or if you have a reasonable doubt thereof, that on the occasion in question Floyd Toliver, the peace officer, used or attempted to use greater force than was necessary to effect an arrest of the defendant before the defendant offered any resistance and that the defendant resisted such efforts to arrest him when and to the degree he reasonably believed the force was immediately necessary to protect himself against such use or attempted use of greater force than necessary, then you will acquit the defendant of the charge of aggravated assault on a peace

10

officer.

Appellant's entitlement to this instruction is governed by section 9.31(c) of the penal code, which provides that a defendant is entitled to use force in resisting arrest if there is some evidence in the record that (1) "before the actor offers any resistance, the peace officer . . . uses or attempts to use greater force than necessary to make the arrest or search," and (2) "the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's . . . use or attempted use of greater force than necessary." *See* TEX. PENAL CODE ANN. § 9.31(c); *Porteous*, 259 S.W.3d at 748. In other words, appellant was only entitled to this instruction if there was some evidence at trial that, before appellant offered any resistance, Sergeant Toliver used excessive force in attempting to arrest appellant.[5]

The evidence in this case showed, undisputedly, two things: (1) appellant did offer resistance before Sergeant Toliver attempted to arrest him, and (2) the only force Sergeant Toliver used before appellant attacked him was to grab appellant's arm. In his testimony at trial, appellant admitted that he was behaving belligerently when Sergeant Toliver was attempting to question Jessica. Appellant testified that he directed numerous obscenities at both Sergeant Toliver and Jessica and that he refused Sergeant Toliver's first two requests to step outside. Based on the testimony at trial, we cannot conclude that appellant offered no resistance before Sergeant Toliver attempted to arrest him. Moreover, "evidence that a police officer grabbed a suspect's arms, in itself, would [ordinarily] not be sufficient to show the officer used excessive force to effect an arrest."

---

[5] By requesting this instruction and asking that we review its denial on appeal, appellant appears to concede that Sergeant Toliver tried to arrest him at some point during the events at LouAnn's home.

11

*Flores v. State*, 942 S.W.2d 735, 737–38 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *see also Szumny v. State*, No. 13-97-00902-CR, 1999 WL 33757425, at *3 (Tex. App.—Corpus Christi Sept. 30, 1999, no pet.) (not designated for publication). And the evidence here was that the only force used by Sergeant Toliver was grabbing appellant's arm, at which point appellant swung around and struck the officer.

In sum, there was insufficient evidence raising the justification of excessive force, and the trial court therefore did not err in denying appellant's fourth requested instruction. *See Shaw*, 243 S.W.3d at 657–58.

## D. Summary

Having concluded that the trial court properly denied each of appellant's requested defensive instructions, we overrule appellant's issue on appeal.

## IV. Conclusion

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
1st day of May, 2014.

12